J-S28033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF MARY H. HENDERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ARNIE STEINBERG | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1151 WDA 2022 |

Appeal from the Order Entered September 21, 2022
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 021604067

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: December 13, 2023**

Appellant, Arnie Steinberg, the executor of the estate of Mary H. Henderson ("Decedent") appeals from the order entered in the Court of Common Pleas of Allegheny County, Orphans' Court Division, granting a charitable organization named beneficiary under the will $104,776.53 against the estate consistent with the terms of Decedent's will, and surcharging Appellant any amount of said order that could not be satisfied by the funds remaining in the estate.  After careful review.  We affirm.

The relevant procedural history and the orphans' court's findings of fact are comprised in the court's two orders dated April 6, 2022, and September 20, 2022, and are as follows:

> This estate was opened on July 22, 2016, by Arnold Y. Steinberg, who is the successor Executor according to the Decedent's Will

---

[*] Former Justice specially assigned to the Superior Court.

dated October 26, 2009.[fn]  After payment of the expenses of the Decedent's last illness, expenses of estate administration, and all taxes, the Will provides for the remaining assets to be distributed to Charles J. Lang if he survives the Decedent, or Emma H. Lang if Charles J. Lang is deceased and she survives the Decedent, or if neither Charles nor Emma Lang survives the Decedent, equally to Arnold Steinberg and [The Masonic Villages of the Grand Lodge of Pennsylvania d/b/a Masonic Village at Sewickly ("Masonic Village")].  As neither of the Langs was living at the time of the Decedent's death on June 28, 2016, the third option under the Will was applicable.

[During the fall of 2016, Executor paid Masonic Village a total of $150,000.00, through a check for $100,000.00 signed on September 23, 2016, and a check for $50,000.00 signed on November 21, 2016.]  The Executor filed an Inheritance Tax Return on August 18, 2017, and an Inventory on March 23, 2018. The Inventory lists estate assets of almost $600,000[, and debts of $203,872.94, in which the Executor included the $150,000.00 paid to Masonic Village as a beneficiary under the will.]

---

Fn:    Mr. Steinberg was formerly a licensed attorney in this Commonwealth, having been disbarred by consent on December 30, 2008.

---

As the Executor had not filed a Formal Account and completed the estate administration, [ ] Counsel on behalf of the Masonic Village filed [an October 5, 2020,] Petition seeking a Rule to Show Cause Why the Executor Should Not File a Formal Account, which was more than four years after the Decedent's death.  [In its petition, Masonic Village noted that when Executor claimed the $150,000.00 distribution under the will to Masonic Village as a deduction on the inheritance tax, he improperly subtracted the dollar amount twice from the Estate, thus depriving Masonic Village of a larger distribution.]  Pursuant to an Order of Court dated November 30, 2020, the Executor was directed to file a First and Final Account on or before December 29, 2020, and a status conference was scheduled for December 30, 2020.

As the Executor claimed to be recovering from Covid-19, the [orphans' court] granted his request for an extension of time and directed the Account to be filed on or before February 16, 2021,

with a status conference scheduled for February 19, 2021. The Executor requested an additional extension of time, which was reluctantly granted.

On or about March 18, 2021, the Executor provided Counsel for the Masonic Village a copy of a "Final Accounting", which he claimed to have filed on March 12, 2021; however, the "Final Accounting" and a Petition for Adjudication do not appear on the docket of the Department of Court Records until August 2, 2021.

The matter was placed on the September 20, 2021, Audit List before the [orphans' court]. Objections were filed by Counsel for the Masonic Village and by the Office of the Attorney General (Charitable Trusts and Organizations Section), along with Supplemental Objections. In summary, the Objections challenge[d] certain disbursements made by the Executor to himself for numerous claimed trips from his residence in Florida to Pittsburgh and excessive "commissions" that the Executor paid to himself.

Over the next couple of months, the Executor sought repeatedly to delay a hearing in this matter. He sought discovery from the Commonwealth, even though he was the only person in possession of documentation of his expenses. On February 15, 2022, the [orphans' court] granted a Motion for Partial Judgment on the Pleadings with regard to a clear error on the Inheritance Tax Return [to the extent it] listed a $150,000 distribution to the Masonic Village (who is a beneficiary under the Will) as a debt.

. . . .

An evidentiary hearing was held on March 9, 2022. At that hearing, the burden was on the Executor to present evidence to disprove the Objections. He did not do so. When asked for copies of checks for certain expenses, he stated that the expenses were paid via credit card. When asked for the credit card receipts or statements, the Executor responded that he did not go to his storage facility to retrieve these documents. (N.T. 3/9/22, p. 14-15). The Executor repeatedly stated, "tell me what you want me to do" or "what expenses are you objecting to[?]" [The orphans' court opined that] it is not the responsibility of the Objectors to instruct the Executor on how to present his case and document his expenses. Rather, [the orphan's court continued], the Executor was required to be prepared—with receipts, cancelled

- 3 -

checks, credit card statement, etc.—to establish the validity of his expenses. He simply did not do so. . . .

During the hearing, the Executor stated that he mailed an Amended Final Accounting to the [orphans' court] and counsel. Per the court docket, the Amended Final Accounting was filed on March 10, 2022 (the day after the hearing). At the end of the hearing, the Attorney for the Commonwealth offered to provide the [orphans' court] with a Proposed Order. The [orphans' court] accepted the offer and afforded the Executor time to respond and/or provide copies of receipts and statements that he intended to retrieve from his storage unit. The Attorney for the Commonwealth provided the [orphans' court] with a draft Order via email on March 18, 2022.

As of the date of preparation of the [orphans' court's] Memorandum Opinion and Order of April 6, 2022, (filed on April 8, 2022)], the Executor [had] not provided the [orphans' court] with any additional documents or information.

. . . .

[Based on the orphans' court's review of the First and Final Accounting, the Amended Final Accounting, the Objections, and the Supplemental Objections, it sustained the Objections and Supplemental Objections on the following grounds:]

> First, as there is no documentation of the actual expenses incurred by the Executor, he is not entitled to be reimbursed. Moreover, there are no grounds for reimbursement for "missed work", both mileage and car rental fees, and "meal allowance." Second, the Executor is not entitled to both an Executor's fee and a "commission in lieu of attorney fee" (which is an undefined entry). Third, per the Johnson Estate case, the claimed Executor's fee is extraordinary. Fourth, the number of trips claimed by the Executor to handle Estate matters is not believable, as this is not a complex estate.

Based upon the foregoing, the [orphans' court] issued its Order of April 6, 2022, [(filed on April 8, 2022) reducing the Executor's fee to $24,895, eliminating the commission in lieu of attorney fee, reducing the debts of the Decedent to $53,557.94, reducing

Executor's expenses to $5,522, and granting the Objections and Supplemental Objections in certain particulars.

. . .

[Subsequently, the orphans' court scheduled a Status Conference to be held on September 2, 2022.] Executor, however, disregarded the [orphans' court's] order. He failed to appear for this Status Conference even though he was served with the July 6, 2022, Order setting the Status Conference.

[In the in orphans' court's Order of September 20, 2022, the court first noted Executor's failure to appear at the Status Conference before it turned to the substantive issue arising from its] April 6, 2022, Order requiring Executor to file an Amended Inheritance Tax Return on or before May 16, 2022, and an Amended Petition for Adjudication one month later, on or before June 15, 2022. This April 6, 2022, Order was temporarily stayed in light of Executor's appeal to the Pennsylvania Superior Court, [but the Superior Court quashed the appeal by *per curiam* order dated June 27, 2022, because Executor, who was not a licensed attorney, was ineligible to represent the estate on appeal, and because the orphans' court order was not a "final order" that was immediately appealable].

Executor then submitted for filing with the Pennsylvania Department of Revenue a Second Amended Inheritance Tax Return for the Estate on July 12, 2022. Executor, however, failed to submit an Amended Petition for Adjudication one month later (or by August 12, 2022) as required by [the orphans' court's Order of] April 6, 2022.

> [The orphans' court observed that] Executor has a substantial history of neglecting his executor responsibilities for now almost two years. [Since the Masonic Village filed its October 5, 2020, Petition for Rule to Show Cause Why Executor and Trustee of the Estate of Mary H. Henderson Should Not File a Formal Account of the Estate], the [orphans' court], without any objections from Masonic Village and the Pennsylvania Office of the Attorney General ("OAG"), has graciously and generously permitted Executor numerous continuances to address Masonic Village's Petition. [It was further the finding of the orphans' court that the] Executor, however, failed to act in

- 5 -

good faith and only engaged in actions which caused delays.

Given the history of this Estate, [the orphans' court] issue[d] a final order and grant[ed] the following particulars:

(1) During the hearing on March 9, 2022, Executor testified under oath that approximately sixty-six thousand dollars ($66,000) in liquid assets remain in the Estate. This amount, along with any additional Estate assets, shall be placed into the escrow account maintained by [the orphans' court]. Executor is prohibited from further disposition of any Estate assets.

(2) As a result of the hearing on March 9, 2022, [the orphans' court found] the following to be an accounting of the above-referenced Estate:

| | |
|---|---|
| Gross amount of the estate assets | $597,384.00 |
| Debts of Decedent | ($53,557.94) |
| Executor expenses/debt to Executor | ($5,522.00) |
| Funeral expenses | ($3,856.00) |
| Personal representative Commission | ($24,895.00) |
| Fees in lieu of attorney fees | $0.00 |
| Total expenses, costs and debts (or deductions) | ($87,830.94) |
| Net residue of the Estate | $509,553.06 |

Masonic Village is to receive a total of $254,776.53 from the Estate. Having previously received $150,000, Masonic Village is due and owed an additional $104,776.53 from the Estate.

Executor is required to file with the [orphans' court] and serve upon the Masonic Village and the OAG a Formal Account of the Estate by September 23, 2022, to demonstrate the status of the payment of $104,776.53 owed to Masonic Village. In addition to complying with any applicable Rules of Court, this Formal Account of the Estate must be sent to the Masonic Village and the OAG by a means which guarantees receipt by these parties before the close of business on September 26, 2022.

. . .

Judgment of $104,776.53 is issued in favor of Masonic Village and against the Estate and Executor. This judgment shall first be paid from the Estate. To the extent there is not full satisfaction of the judgment of $104,776.53 by the Estate, Executor is hereby surcharged and personally liable to Masonic Village for any amount owed for satisfaction of this judgment. This Order shall represent a Final Order from which Executor may appeal.

Orphans' Court Orders, 04/6/22 and 09/20/22.

Mr. Steinberg presents the following questions for this Court's consideration:

1. Whether the Trial Court committed error in its rulings against Appellant in light of the fact that the record is devoid of any justification for the Court's having granted the relief sought by the Appellees, despite pleadings having been filed by the Appellant, to which no factual pleadings were filed in opposition thereto, that showed that the Appellees were not entitled to the relief they were seeking.

2. Whether the trial court showed a predisposition of prejudice toward the Appellant when it ignored the uncontested pleadings of the Appellant which explained the need for multiple trips to Pennsylvania to properly probate this Estate, and granted all relief sought by the Appellee Masonic Villages, despite a lack of even a scintilla of evidence offered by either Appellee to justify the reductions Ordered by the trial court.

3. Whether the Trial Court showed a predisposition of prejudice toward the Appellant when, with no evidence offered to justify

it, it reversed many of the estate deductions and compensations that had been approved by the Commonwealth of Pennsylvania Department of Revenue, Inheritance Tax Division, despite undisputed proof having been pled to justify all such deductions and necessary expenses.

4. Whether the Trial Court showed a predisposition of prejudice toward the Appellant, when it held an *ex parte* hearing on September 2, 2022, adopting the fraudulent language of an order submitted by the Appellee Masonic Villages, indicating that the Appellant had been served with an Order that did not even appear on the docket.

5. Whether the trial court showed a predisposition of prejudice toward the Appellant, when it entered an Order, prejudicially erroneous in both fact and law, allowing for a personal surcharge to be entered against the Appellant, when there was not even a hint of proof offered to satisfy either the factual or legal requirements for an order granting a request for a personal surcharge.

6. Whether the apparent prejudice, demonstrated by the Trial Judge, along with the gross abuse of discretion on his part, warrants an outright reversal of the Order from which this appeal has been taken.

Brief of Appellant, at 7.

Initially, we address the issue of Pa.R.A.P. 1925 waiver. The Pennsylvania Supreme Court has instructed: "[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation under the rule, and, therefore, we look first to the language of that order."

***Berg v. Nationwide Mut. Ins. Co., Inc.***, 607 Pa. 341, 6 A.3d 1002, 1007-08 (2010). The **Berg** Court warned:

> While we conclude that the specific facts of this case compel a departure from the strict application of waiver contemplated by Rule 1925(b), we note that the case *sub judice* illustrates the importance of the trial court's adherence to the requirements set forth in [Rule] 1925(b)(3). Although the amendments to Rule 1925(b) were intended, in part, to address the concerns of the bar raised by cases in which courts found waiver because a Rule 1925(b) [S]tatement was either too vague or so repetitive or voluminous that it did not enable the judge to focus on the issues likely to be raised on appeal, *see* [Rule] 1925 Comment, **compliance by *all* participants, including the trial court, is required if the amendments and the rule are to serve their purpose.**

***Id.*** at 1012 (bold emphasis added).

Our review of the orphans' court docket reveals that *pro se* Appellant's Pa.R.A.P. 1925(b) statement was not filed by November 9, 2022, as required by the trial court's Rule 1925(b) order. As a result, the orphans' court's Rule 1925(a) opinion finds waiver of all issues raised on appeal due to the patent untimeliness of Appellant's Rule 1925(b) statement.

Appellant contends, however, that he never received the Rule 1925(b) order, despite its being docketed, suggesting that the orphan's court may not have had his correct address. It is apparent, moreover, that requisite Orphan's Court Rule 4.6 notice does not appear on the docket to demonstrate that notice of the order was given for either the Rule 1925(b) order or the Rule 1925(a) opinion.

Additionally, the orphan's court's Rule 1925(b) order does not indicate the specific number of days within which Appellant had to file the statement as required under Pa.R.A.P. 1925(b)(3)(i) (mandating that 1925(b) order include number of days within which statement must be filed), nor does the Rule 1925(b) order expressly state "any issues not properly included in the Statement timely filed and served . . . shall be deemed waived," as is required by Rule 1925(b)(3)(iv).  Instead, it reads, "failure to comply with this Order may be considered by the appellate courts to be a waiver of all objections to the order appealed from."  Orphans' Court Pa.R.A.P. 1925(b) Order, 10/20/2022.  For these reasons, we decline to quash the present appeal for Appellant's belated filing of his court-ordered Rule 1925(b) concise statement.

Turning to the merits of the present appeal, we begin by setting forth our standard of review of Orphans' Court decisions, as follows:

> The findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support.  This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony.  In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.  However, we are not limited when we review the legal conclusions that [the] Orphans' Court has derived from those facts.

***In re Estate of Cherwinski****,* 856 A.2d 165, 167 (Pa. Super. 2004) (citation omitted).

Appellant's six enumerated issues coalesce to argue that the orphans' court showed a "predisposition of prejudice" toward him in his role as executor when it rejected what he maintains were his uncontested pleadings in the form of both a Final Account and Supplemental Final Account explaining the need for numerous trips to Pennsylvania to probate the estate and granted all Appellees' requests for reductions to the Final Accounting. Brief of Appellant, at 18. We disagree.

Appellant presents a narrative asserting both that his repeated emails to the Attorney General's Office offering to amend his proposed estate return and file it went unanswered, and that Appellee Masonic Villages sent an email to him in January of 2019 stating it would not request the filing of an Account. Brief of Appellant, at 19. Had the Attorney General's Office and Masonic Villages responded in the affirmative to Appellant's initial offer to amend the Estate Return and file an Account, Appellant maintains, "much time and expense would have been saved by all." ***Id.*** at 20.

The crux of Appellant's argument is that the personal surcharge levied against him was improper because his error of twice listing an estate deduction for the $150,000 bequest to Masonic Villages was inadvertent and because his submission of expenses and costs that were reviewed and approved by the Department of Revenue, Income Tax Division, should not have formed the basis for the orphans' court's ruling. To this end, he asserts:

In this case, the Appellant, acting as Executor, sought to administer the Estate, find a way to reduce State Inheritance Taxes, sent funds to the co-residuary beneficiary (the Appellee—[Masonic] Villages), and attempted to preserve those assets that could be preserved. That is exactly what he did. The pleadings filed by either Appellee do not show any accusations that the Appellant failed to perform these duties. Rather, they simply say that it cost too much money to administer this estate, and without having seen the mess caused by the fact that the estate home had been without utilities for several months, and without having ever spoken to anyone associated with the massive clean-up that was required, simply said that the Appellee-Villages wanted the Trial Court to reduce and eliminate the expenses borne by the Estate and the Appellant.[1]

This request, despite the presence [sic] of even a scintilla of evidence to support it, was granted, in full, by the Trial Court who either ignored the pleadings of the Appellant, or who didn't even bother to read and consider them. In short, this case became an instance of the Trial Court asking what the Appellee-Villages wanted, and then Granting it, despite a failure to produce law or fact to justify such action. At that point in time, the Appellee-

_____

[1] In Appellant's attempt to explain the reasons for so many trips, he offered the following generally stated, unverified problems with and repairs to the estate:

The Executor made a substantial number of trips to Pennsylvania to tend to the business of the Administration of this Estate. The home of the Decedent had been locked up and without power for a period of at least two months. Food in three refrigerators had spoiled. The electrical panel in the garage had become defective. There were numerous plumbing problems that needed corrected [sic]. There were numerous repairs that had to be made on this home. A locksmith had to be hired and then met to change locks and make keys. There was a substantial amount of furniture and personal belongings that needed to be disposed of. Maintenance of the home and its surrounding property was required. There were no living relatives to do any of this work.

Appellant's "Response to the Objections to the Account By the Masonic Villages", 2/7/2022, at ¶ 5.

Commonwealth "jumped on the bandwagon" and went along with every position taken by the Appellee [Masonic] Villages.

"Ordinarily, the party seeking to surcharge an executor bears the burden of showing a failure to meet the required standard of care." *In re Westin*, 874 A.2d 139, 145 (Pa. Super. 2005). Neither Appellee offered any proof or pleading to support the claims that the Appellant should be subject to a personal surcharge. All that they did was plead that the Appellant spent too much money and that his compensation, although approved by the Inheritance Tax Division, was too high."

Appellant's Reply Brief, at 15-17.

The Commonwealth's initial response is to refer to this Court's *per curiam* order of June 27, 2022, in which we quashed Appellant's appeal because he was not a licensed attorney and could not, therefore, represent the estate on appeal. *See* R.R. 584; *Norman for Estate of Shearlds v. Temple University Health System*, 208 A.3d 1115, 1121 (Pa. Super. 2019) (holding a *pro se* executor may not represent an estate on appeal if the estate has other beneficiaries or creditors). To the extent we construe Appellant's issues as contesting the merits of the trial court's order upholding Masonic Village's Objections to the Final Accounting of the estate, we reassert our previous determination that Appellant may not represent the estate in an appeal of this determination.

Nevertheless, a facet of Appellant's present appeal from the Orphans' Court's order involves the discrete argument that the order surcharging him $104,076.53 aggrieved him personally because it was reached by unfairly denying him certain fees and reimbursement of expenses that he says were reasonable, appropriate, and necessary to fulfill his obligation as executor to

- 13 -

probate the Decedent's Estate. Specifically, Appellant maintains that not only did his pleadings substantiate his charges to the estate for all commissions and fees, as well as all expenses associated with his Florida-to-Pennsylvania trips charged to the estate, but they also went uncontested by Appellees. This position, on both counts, is untrue.

We adhere to the following standard of review:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and [whether] the trial court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, this Court will not reverse the trial court's credibility determinations absent an abuse of discretion.

*In re Est. of Aiello*, 993 A.2d 283, 287 (Pa. Super. 2010) (citations omitted).

This Court has further explained:

An executor, as a fiduciary of the estate, is required to use such common skill, prudence and caution as a prudent man, under similar circumstances, would exercise in connection with the management of his own estate. [.... A] surcharge may be imposed on the executor to compensate the estate for any losses incurred by the executor's lack of due care. When seeking to impose a surcharge against an executor for the mismanagement of an estate, those who seek the surcharge bear the burden of proving the executor's wrongdoing. However, where a significant discrepancy appears on the face of the record, the burden shifts to the executor to present exculpatory evidence and thereby avoid the surcharge.

*In re Est. of Geniviva*, 675 A.2d 306, 310–311 (Pa. Super. 1996) (internal citations and quotations omitted).

Whereas,

this Court has recognized the rule forbidding an executor from placing his own interests ahead of the interests of other beneficiaries:

> An executor is a fiduciary no less than is a trustee and, as such, primarily owes a duty of loyalty to a beneficiary of his trust. Executors, as well as other fiduciaries, are under an obligation to make full disclosure to beneficiaries respecting their rights and to deal with them with utmost fairness.

The Supreme Court has elaborated accordingly that:

> He that is entrusted with the interest of others, cannot be allowed to make the business an object of interest to himself; because from the frailty of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of others for whom he is entrusted.

Thus, the rule forbidding self-dealing serves both to shield the estate and its beneficiaries and ensures the propriety of the executor's conduct. Consequently, the rule is inflexible, without regard to the consideration paid, or the honesty of intent.

*In re Est. of Walter*, 191 A.3d 873, 881 (Pa. Super. 2018) (internal quotations, citations, and original brackets omitted).

*In re Est. of DiMatteo*, 293 A.3d 634 (Pa. Super. Ct. 2023).

Furthermore, an executor or attorney seeking fees for services to an estate bears the burden of proof. *In re Estate of Sonovick*, 541 A.2d 374, 376 (Pa. Super. 1988). It is axiomatic that the executor of an estate is accountable for the fees paid to themselves and, thus, must present facts that show entitlement to the requested compensation. *Id*.

Attorneys and fiduciaries are entitled to reasonable and just compensation based on actual services rendered to an estate. *Id.;* 20

Pa.C.S.A. § 3537. The determination of whether an administrator's commission is reasonable is within the discretion of the orphans' court. ***In re Estate of Rees***, 625 A.2d 1203, 1206 (Pa. Super. 1993); ***see also In re Strickler's Estate***, 47 A.2d 134 (Pa. 1946). The orphans' court is authorized "to reduce to a 'reasonable and just' level those fees and commissions claimed by the fiduciary and their counsel." ***Estate of Rees***, ***supra***. We will not overturn an orphans' court's decision to disallow attorney's fees "absent a clear error or an abuse of discretion[.]" ***Id***.

Initially, it is apparent that Appellee Masonic Villages contested Appellant's accounting. As part of Masonic Villages' "Objections to the First and Final Account", filed on April 14, 2021, it objected to the "flat fee" disbursements of principal made by Appellant to reimburse himself a total of $24,000 for nine Florida-to-Pittsburgh flights Appellant took between February 27, 2016, and July 22, 2016, as the Account neither explained the need for, nor included documentation proving payment of the expenses associated with, such trips. Other than conceding the need for the June 21, 2016, trip, which occurred just before Decedent passed away, Masonic Villages requested documentary support for the flat fee principal disbursements Appellant made to cover his remaining claimed expenses as executor. ***See*** Objections to the First and Final Account, 04/14/21, at 1-3. Appellant produced no such support, and so Masonic Villages objected to the $20,500 in disbursements made to cover undocumented expenses for eight of the nine trips taken.

Furthermore, in Masonic Villages' October 6, 2021, "Supplemental Objections to the Final Accounting", filed in response to Appellant's August 2, 2021, Final Accounting, it presented a detailed objection to Appellant's "itemization" of additional disbursements on the Account in the amount of $70,075.00 made between July 29, 2016, and March 25, 2018, to cover claimed expenses associated with 20 more trips from Florida to Pittsburgh taken during this 20-month timeframe following Decedent's death. Again, in contesting the need for such frequent and costly trips, Masonic Villages asserted that Appellant provided no documentation, with accompanying proof of payments, explaining why 20 costly trips were necessary to probate a relatively simple estate.

In this vein, Masonic Villages' Supplemental Objections posited that the orphan's court should deny disbursements for 18 of the 20 trips outright and otherwise eliminate disbursements made to cover claimed mileage expenses, which, it argued, should be unavailable for rental car use. Supplemental Objections, at 3-4. After eliminating 18 trips from the accounting, Masonic Villages concluded, the "Corrected Disbursement to which Executor is entitled" equaled $5,522.00 rather than the $70,075 claimed by Appellant. *Id.* at 4.

Masonic Villages also contested Appellant's having paid himself a $59,700 Executor's Commission, which comprised $29,850 for the Executor's Fee and $29,850 for administration in lieu of attorney fees. Because Appellant is not licensed to practice law in Pennsylvania, Masonic Villages argument

went, he could claim neither attorney fees nor anything "in lieu of" attorney fees in the Final Account.

The Commonwealth, acting through the Office of the Attorney General in pursuance of its public responsibility to supervise charities via its *parens patriae* powers, joined Masonic Villages in these objections. In so doing, it pointed to Appellant's failure to heed the orphans' court's instructions to bear his burden of proof by producing at the scheduled March 9, 2022, evidentiary hearing documentary evidence supporting his claimed expenses.

Referring to the orphans' court's memorandum opinion and order dated April 9, 2022, reproduced verbatim in relevant part, *supra*, the Commonwealth emphasizes that Appellant was given every opportunity to submit proof of expenses but "completely failed to provide copies of checks, credit card receipts, and credit card statements documenting the specific expenses that he was claiming." Brief for Appellee Commonwealth of Pennsylvania, at 28, citing orphan's court opinion and order, 4/9/22, at 1-2. Given the "estate's simplicity and value," the Commonwealth reasons, the orphans' court acted within its sound discretion to reduce Appellant's claimed expenses.

Moreover, the Commonwealth points to Appellant's apparent dissipation of the Estate after the March 9, 2022, hearing, despite having been ordered by the Orphans' Court that he was not to spend any of the remaining $66,110.13 balance that Appellant, himself, informed the trial court both orally at the hearing and through the submission of his March 1, 2022

Amended First and Final Account, which existed at the time of the hearing. There is no dispute that an excerpt of the notes of testimony contained in the certified record confirms that Appellant agreed with the stated amount of the balance and indicated he understood the court's directive that he was not to "touch" said balance. N.T., 4/9/22, at 5, 23.[2]

_____

[2] The excerpt provides, as follows:

| | |
|---|---|
| **[APPELLANT]**: | . . . Judge, you entered an Order January 7th directing certain things to be done, one of which was I had to respond to these objections – I'm sorry—to the Motion for Judgment on the Pleadings by February 24th. |
| | February 15th, you entered an Order granting that Motion and ordering me to file the Amended Account by February 28th. |
| | . . . |
| | I sent the First Accounting -- The Amended Accounting – up probably around March 1st or March 2nd. |
| | We did delete the second $150,000 disbursement, or credit, or whatever you want to call it, from there, and as a result, the Estate no longer shows a loss, but it shows a balance of $66,110.13. |
| | . . . |
| **ATTORNEY HERNE [OAG]:** | [Appellant] indicated earlier today, that there was $66,000 in the |

*(Footnote Continued Next Page)*

After careful review, we conclude that Appellant offers nothing to rebut evidence of record that he failed to satisfy his burden as executor to prove both the need for so many expensive trips and the payments for all services claimed necessary to probate the estate. Despite receiving from a patient orphans' court ample time to produce such proof, Appellant simply restated his unsubstantiated claims that the estate required more work than Masonic Villages and the Commonwealth possibly could know. At such point, the orphans' court had before it nothing more than Appellant's self-prepared ledger of claimed expenses unaccompanied by proof of payments and his insistence that the court should just believe him. Because Appellant's

_____

|  |  |
|---|---|
|  | Account. If he would just not touch that money. |
| THE COURT: | You are not going to touch the money, right, Mr. Steinberg? |
| [APPELLANT]: | I'm not touching anything. |
| THE COURT: | Okay. Good. $66,000 is what Mr. Herne is referencing. |
| ATTORNEY HERNE: | Which you indicated was in your Amended Accounting. |
| [APPELLANT]: | Yeah, which you should have had. I'm surprised you don't have it, but, yes. |
| ATTORNEY HERNE: | I'm surprised as well, sir. |

N.T., 4/9/22, at 5, 23.

inadequate response both flouted the orphans' court's order for documentary proof of claimed expenses and failed to meet an executor's obligations under controlling authority cited above, we discern no error with the surcharge order entered below.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/13/2023